# EXHIBIT A

**EXHIBIT A**

**SALTZ MONGELUZZI & BENDESKY, P.C.**
BY: ROBERT J. MONGELUZZI/DAVID L. KWASS/
BENJAMIN J. BAER
IDENTIFICATION NO.:  36283/65856/205779
1650 MARKET STREET, 52ND FLOOR
PHILADELPHIA, PA  19103
(215) 496-8282



*Filed and Attested by the
Office of Judicial Records
30 JUL 2021 04:50 pm
E. HAURIN*

| | |
|---|---|
| WILLIAM CORRY, | PHILADELPHIA |
| | COURT OF COMMON PLEAS |
| *Plaintiff,* | CIVIL DIVISION |
| | |
| v. | JUNE TERM, 2021 |
| | |
| TEREX CORPORATION, et al. | NO: 2408 |
| | |
| *Defendants.* | |
| | JURY TRIAL DEMANDED |

<u>**PRAECIPE TO REINSTATE COMPLAINT**</u>

TO THE PROTHONOTARY:

    Kindly reinstate the Plaintiff's Complaint in the above-captioned matter.

                **SALTZ MONGELUZZI & BENDESKY P.C.**


          BY:   */s/ Benjamin J. Baer*
               ROBERT J. MONGELUZZI, ESQUIRE
               DAVID L. KWASS, ESQUIRE
               BENJAMIN J. BAER, ESQUIRE
               *Attorneys for Plaintiff*

Dated: <u>July 30, 2021</u>

Case ID: 210602408

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

| For Prothonotary Use Only (Docket Number) |
|---|
| **JUNE 2021** 002408 |
| E-Filing Number: 2106059038 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| WILLIAM CORRY | TEREX CORPORATION |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 13 MARIAN RD.<br>PHOENIXVILLE PA 19460 | 200 NYALA FARM ROAD<br>WESTPORT CT 06880 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | TEREX USA, LLC |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | 200 NYALA FARM ROAD<br>WESTPORT CT 06880 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | TEREX SERVICES |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | 2450 MARIETTA AVE.<br>LANCASTER PA 17601 |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION | | |
|---|---|---|---|---|
| 1 | 8 | ☒ Complaint  ☐ Petition Action  ☐ Notice of Appeal<br>☐ Writ of Summons  ☐ Transfer From Other Jurisdictions | | |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | |
|---|---|---|---|
| ☐ $50,000.00 or less<br>☒ More than $50,000.00 | ☐ Arbitration<br>☒ Jury<br>☐ Non-Jury<br>☐ Other: | ☐ Mass Tort<br>☐ Savings Action<br>☐ Petition | ☐ Commerce<br>☐ Minor Court Appeal<br>☐ Statutory Appeals | ☐ Settlement<br>☐ Minors<br>☐ W/D/Survival |

**CASE TYPE AND CODE**

2P - PRODUCT LIABILITY

**STATUTORY BASIS FOR CAUSE OF ACTION**

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | **FILED PRO PROTHY**<br><br>JUN **30** 2021<br><br>**S. RICE** | IS CASE SUBJECT TO<br>COORDINATION ORDER?<br>YES          NO |
|---|---|---|

**TO THE PROTHONOTARY:**

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: <u>WILLIAM CORRY</u>

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| BENJAMIN J. BAER | SALTZ MONGELUZZI BENDESKY PC<br>ONE LIBERTY PLACE<br>1650 MARKET STREET 52ND FL<br>PHILADELPHIA PA 19103 |

| PHONE NUMBER | FAX NUMBER |
|---|---|
| (215)496-8282 | (215)496-0999 |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 205779 | bbaer@smbb.com |

| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
|---|---|
| *BENJAMIN BAER* | Wednesday, June 30, 2021, 04:04 pm |

Case ID: 210602408

FINAL COPY (Approved by the Prothonotary Clerk)

## COMPLETE LIST OF DEFENDANTS:

1. TEREX CORPORATION
     200 NYALA FARM ROAD
     WESTPORT CT 06880
2. TEREX USA, LLC
     200 NYALA FARM ROAD
     WESTPORT CT 06880
3. TEREX SERVICES
     2450 MARIETTA AVE.
     LANCASTER PA 17601
4. TEREX SERVICES - LANCASTER
     2450 MARIETTA AVE.
     LANCASTER PA 17601
5. TEREX UTILITIES, INC.
     12805 SW 77TH PLACE
     TIGARD OR 97223
6. DUECO, INC.
     N4 W22610 BLUEMOND RD.
     AAUKESHA WI 53187
7. JOHN DOE 1
     1650 MARKET STREET 52ND FLOOR
     PHILADELPHIA PA 19103
8. JOHN DOE 2
     1650 MARKET STREET 52ND FLOOR
     PHILADELPHIA PA 19103

Case ID: 210602408

**SALTZ MONGELUZZI & BENDESKY, P.C.**
BY: ROBERT J. MONGELUZZI/DAVID L. KWASS/
BENJAMIN J. BAER
IDENTIFICATION NO.:  36283/65856/205779
52ND FLOOR
1650 MARKET STREET
PHILADELPHIA, PA  19103
(215) 496-8282



ATTORNEYS FOR PLAINTIFF

*Filed and Attested by the
Office of Judicial Records
30 JUN 2021 04:58 pm
E. HAUER*

| | |
|---|---|
| WILLIAM CORRY<br>13 Marian Rd.<br>Phoenixville, PA 19460<br><br>      Plaintiff,<br><br>  v.<br><br>TEREX CORPORATION<br>200 Nyala Farm Road<br>Westport, Connecticut 06880.<br><br>and<br><br>TEREX USA, LLC<br>200 Nyala Farm Road<br>Westport, Connecticut 06880.<br><br>and<br><br>TEREX SERVICES<br>2450 Marietta Ave.<br>Lancaster PA 17601<br><br>and<br><br>TEREX SERVICES - LANCASTER<br>2450 Marietta Ave.<br>Lancaster PA 17601<br><br>and<br><br>TEREX UTILITIES, INC.<br>12805 SW 77th Place<br>Tigard, OR 97223<br><br>and | PHILADELPHIA<br>COURT OF COMMON PLEAS<br>CIVIL DIVISION<br><br> NO.:<br><br><br><br>JURY TRIAL DEMANDED |

Case ID: 210602408

DUECO, INC.
N4 W22610 Bluemond Rd.
Aaukesha, WI 53187

and

JOHN DOE 1

and

JOHN DOE 2

Defendants.

---

**NOTICE**

"You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by an attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may  proceed without you and a judgement may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

"YOU SHOULD TAKE THIS PAPER TO YOUR  LAWYER AT ONCE. IF YOU  DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

PHILADELPHIA BAR ASSOCIATION
LAWYER REFERRAL and INFORMATION SERVICE
One Reading Center
Philadelphia, Pennsylvania 19107
(215) 238-1701"

**AVISO**

"Le han demandado en corte.  Si usted quiere defenderse contra las demandas nombradas en las páginas siguientes, tiene veinte (20) días, a partir de recibir esta  demanda y la notificación para entablar personalmente o por un abogado una comparecencia escrita y tambien para entablar con la corte en forma escrita sus defensas y objeciones a las demandas contra usted.  Sea avisado que si usted no se defiende, el caso puede continuar sin usted y la corte puede incorporar un juicio contra usted sin previo aviso para conseguir el dinero demandado en el pleito o para conseguir culquier otra demanda o alivio solicitados por el demandante.  Usted puede perder dinero o propiedad u otros derechos importantes para usted.

USTED DEBE LLEVAR ESTE DOCUMENTO A SU ABOGADO INMEDIATAMENTE.  SI USTED NO TIENE ABOGADO (O NO TIENE DINERO SUFICIENTE PARA PARGAR A UN ABOGADO), VAYA EN PERSONA O LLAME  POR TELEFONO LA OFICINA NOMBRADA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.  ESTA OFICINA PUEDE PROPORCIONARLE LA INFORMACION SOBRE CONTRATAR A UN ABOGADO.

 SI USTED NO TIENE DINERO SUFICIENTE PARA PAGAR A UN ABOGADO, ESTA OFICINA PUEDE PROPORCIONARLE INFORMACION SOBRE AGENCIAS QUE OFRECEN SERVICIOS LEGALES A PERSONAS QUE CUMPLEN LOS REQUISITOS PARA UN HONORARIO REDUCIDO O NINGUN HONORARIO.

ASSOCIACION DE LICENDIADOS DE FILADELFIA
SERVICO DE REFERENCA E INFORMACION LEGAL
One Reading Center
Filadelfia, Pennsylvania 19107
Telefono: (215) 238-1701"

---

## COMPLAINT – CIVIL ACTION

1.      Plaintiff, William Corry, is an adult individual, who currently resides at 13 Marian Rd., Phoenixville, PA 19460.

2.  Defendant Terex Corporation is a Delaware corporation with its corporate headquarters located at 200 Nyala Farm Road, Westport, Connecticut 06880.

2

Case ID: 210602408

3.   Terex Corporation is a foreign registrant in the Commonwealth of Pennsylvania with registered office at 341 King Street, Myerstown, PA 17067, and a Pennsylvania Corporate Entity Number of 2956617.

4.   Defendant Terex Corporation is engaged in the business of designing, manufacturing, marketing, distributing, and selling bucket trucks with aerial lifts to the consuming public nationwide, including consumers in within the Commonwealth of Pennsylvania.  Specifically, Terex Corporation carries out substantial, continuous, systematic, and regular business activities and regularly conducts business within Philadelphia.

5.   At all relevant times, Terex Corporation was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency, service, and employment with Terex Corporation.

6.   Defendant Terex USA, LLC ("Terex USA") is a Delaware limited liability company with its corporate headquarters located at 200 Nyala Farm Road, Westport, Connecticut 06880.

7.   Terex USA is a foreign registrant in the Commonwealth of Pennsylvania with commercial registered office provider located at Corporation Service Company in Dauphin County.

8.   Defendant Terex USA is engaged in the business of designing, manufacturing, marketing, distributing, and selling bucket trucks with aerial lifts to the consuming public nationwide, including consumers in within the Commonwealth of Pennsylvania.  Specifically, Terex USA carries out substantial, continuous, systematic, and regular business activities and regularly conducts business within Philadelphia.

3

Case ID: 210602408

9.   At all relevant times, Terex USA was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency, service, and employment with Terex USA.

10. Defendant Terex Services is a Pennsylvania business entity and/or fictious name with its principal place of business located at 2450 Marietta Ave, Lancaster PA, 17601.

11. Defendant Terex Services is a Pennsylvania corporation registered to business in Pennsylvania with Pennsylvania Entity Number of 4199915 and an entity creation date of July 9, 2013.

12. At all relevant times, Terex Service was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency, service, and employment with Terex Service.

13. Defendant Terex Services - Lancaster is a Pennsylvania business entity and/or fictious name with its principal place of business located at 180 N Donnerville Rd., Mountville, PA 17554.

14. At all relevant times, Terex Services - Lancaster was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency, service, and employment with Terex Services – Lancaster.

15. Defendants Terex Services and Terex Services - Lancaster are collectively referred to as "Terex Service Defendants."

16.  The Terex Service Defendants are engaged in the business of repairing, refurbishing, inspecting, maintaining, truck equipment, including hydraulic, electric, hybrid bucket trucks.  The

4

Case ID: 210602408

Terex Service Defendants provide services to the consuming public nationwide, including consumers within the Commonwealth of Pennsylvania. The Terex Service Defendants carry out substantial, continuous, systematic, and regular business activities and regularly conduct business within Philadelphia.

17. At all relevant times, Terex Utilities, Inc. ("Terex Utilities") is an Oregon corporation with its corporate headquarters located at 3140, 15th Ave SE, Watertown, SD.

18. Terex Utilities is a foreign registrant in the Commonwealth of Pennsylvania with commercial registered office provider located at Corporation Service Company in Dauphin County.

19. Defendant Terex Utilities is a global manufacturer of aerial devices, digger derricks and auger drills for the electric utility industry and offers service and parts support across the North America. Terex Utilities is a business group within the Terex Aerial Work Platforms Business Segment of Terex Corporation.[1]

20. Terex Utilities is engaged in the business within the Commonwealth of Pennsylvania. This includes, but it not limited to Terex Utilities employing personnel in Pennsylvania, including sales and service personal based in Lancaster, Pennsylvania, which services territory throughout Pennsylvania and specifically Philadelphia. Terex Utilities carries out substantial, continuous, systematic, and regular business activities and regularly conducts business within Philadelphia.

---

[1] https://www.terex.com/utilities/en/about/overview

Case ID: 210602408

21. At all relevant times, Terex Utilities was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency, service, and employment with Terex Utilities.

22. Defendant Dueco, Inc. ("Dueco") is a Wisconsin corporation with its corporate headquarters located at N4 W22610 Bluemond Rd., Waukesha, WI 53187 and is a foreign registrant in the Commonwealth of Pennsylvania with commercial registered office provider located at Corporation Service Company in Dauphin County and a Pennsylvania Corporate Entity Number of 2957486.

23. Defendant Dueco is among the largest providers of Terex products and is engaged in sales and service operations and specifically distributes and services Terex products within the Commonwealth of Pennsylvania, including Hi-Ranger bucket trucks and the subject bucket truck. Specifically, Dueco carries out substantial, continuous, systematic, and regular business activities and regularly conducts business within Philadelphia.

24. Defendant Dueco distributed and serviced the subject bucket truck in Pennsylvania.

25. At all relevant times, Dueco was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency, service, and employment with Dueco.

26. Defendant John Doe 1 is a currently unknown individual, corporation, partnership, or other business entity engaged in the business of designing, manufacturing, marketing, distributing, and/or selling bucket trucks, including the subject bucket truck, and/or John Doe 1 performed maintenance, service, rebuilds, and inspections on the bucket truck.

6

Case ID: 210602408

27. Defendant John Doe 2 is a currently unknown individual, corporation, partnership, or other business entity engaged in the business of manufacturing, assembling, fabricating, distributing, and designing the subject bucket truck.

28. At all relevant times, Defendants John Does 1 and 2 carried out, and continue to carry out, regular, substantial, continuous, and systematic business activities in the Commonwealth of Pennsylvania, and specifically within Philadelphia County.

29. At all relevant times, Defendants John Does 1 and 2 acted by and through their agents, servants, workmen, and/or employees, who were acting within the course and scope of their employment, service, and agency with John Does 1 and 2.

30. Pursuant to Pennsylvania Rule of Civil Procedure 2005, Defendants John Does 1 and 2 are currently unidentified, fictitious defendants.

31. Plaintiff conducted a reasonable and diligent search to determine the actual names and/or identities of Defendants John Does 1 and 2.

32. Despite conducting a reasonable and diligent search, plaintiff is unable to determine the actual names and/or identities of John Does 1 and 2.

33. Plaintiff reserves the right to amend this Complaint and name said unknown individuals and/or entities, as aforementioned, as defendants pursuant to Pennsylvania Rules of Civil Procedure 2005 and 1033.

34. On August 5, 2019, William Corry was performing services as an arborist, including pruning trees and performing tree removals in Berwyn, Pennsylvania.

Case ID: 210602408

35. Mr. Corry was required to work from height and was utilizing a Terex HI RANGER XT5 bucket truck aerial lift, serial number 2010115145 ("bucket truck").

36. After removing multiple trees, Mr. Corry positioned the bucket truck so he could extend the elevator unit and the boom to remove vegetation from a different tree's branches.

37. Mr. Corry extended the elevator unit on the bucket truck.

38. Mr. Corry then extended the boom on the bucket truck.

39. Mr. Corry was at a height of approximately 50 feet.

40. Mr. Corry then began to position the bucket.

41. Suddenly, Mr. Corry felt the bucket begin to move and realized that the bucket truck was tipping over.

42. Mr. Corry was tied off inside the bucket and was helpless to stop the tip over.

43. He feared for his life as the bucket truck tipped and Mr. Corry was slammed into the ground.

44. Mr. Corry ended up on the ground and was buried underneath the bucket.

45. Mr. Corry was extracted from under the bucket by those on the scene.

46. As a direct and proximate result of Defendants' conduct, Mr. Corry suffered catastrophic and permanent injuries, including but not limited to: teeth fractures; a subcondylar fracture of the left mandible; a subcondylar fracture of the right mandible; an open fracture of the symphysis of the body of the mandible; nondisplaced fractures of multiple ribs; facial asymmetry;

Case ID: 210602408

a closed sternum fracture; injuries to his neck and back; and a closed head injury with loss of consciousness. Mr. Corry continues to suffer residuals from these and other injuries, the full extent of which have yet to be determined, and some or all of which may be permanent in nature.

(a)     As a direct and proximate result of the defendants' conduct Mr. Corry has in the past required, continues to require, and may in the future require, medical treatment and care, and has in the past, continues presently, and may in the future incur the cost of medicines, medical care, hospitalizations, treatment, future operations,    testing,    and rehabilitation in an attempt to alleviate his condition;

(b)     As a direct and proximate result of the defendants' conduct Mr. Corry has in the past, and continues to suffer pain, suffering, scarring, disfigurement, loss of independence, mental anguish, humiliation, embarrassment, fear, loss of well-being, inability to enjoy the normal pleasures of life, and restrictions on his ability to engage in normal activity and pleasures of life, and other intangible losses;

(c)     As a direct and proximate result of the defendants' conduct Mr. Corry has been prevented and will be prevented in the future from performing his usual duties, activities, and occupations and avocations and has suffered a loss of earnings and a loss of earning capacity.

47. The bucket truck was designed, manufactured, sold, assembled, distributed, serviced, and/or maintained by Terex Corporation, Terex USA, Terex Services, Terex Services - Lancaster, Terex Utilities and/or Dueco.

Case ID: 210602408

48. The bucket truck was designed, manufactured, sold, assembled, and/or distributed by John Doe 1.

49. The bucket truck assembled, re-built, maintained, and/or serviced by John Doe 2.

50.  By virtue of its design, manufacture, and production, the bucket truck was incapable of being safely used and caused the tip over and subsequent injuries to Mr. Corry.

51. The bucket truck was not properly serviced and maintained, nor was it in a fit for service condition, making it unsafe for use and this was a cause of the tip over and subsequent injuries to Mr. Corry.

52. Dueco was acquired by Terex Corporation, Terex USA, Terex Services, Terex Services - Lancaster, Terex Utilities, John Doe 1 and/or John Doe 2.

53. Terex Corporation, Terex USA, Terex Services, Terex Services -Lancaster, Terex Utilities, John Doe 1 and/or John Doe 2 are liable as entity(ies) that assumed liabilities and/or as an entity(ies) that are successors of liabilities, including but not limited to the liabilities of Dueco.

54. Terex Corporation, Terex USA, Terex Services, Terex Services - Lancaster, Terex Utilities, John Doe 1 and/or John Doe 2 assumed liabilities for conduct that includes, but is not limited to: expressly or impliedly agrees to assume such obligation; the transaction amounts to a consolidation or merger, or "de facto merger"; the purchasing corporation is merely a continuation of the selling corporation; the transaction is fraudulently entered into to escape liability; the transfer was not made for adequate consideration and provisions were not made for the creditors of the transferor; and/or the successor undertakes to conduct the same manufacturing operation

10

Case ID: 210602408

of the transferor's product lines in essentially an unchanged manner, commonly referred to as the "Product Line exception".

55. In the alternative, Terex Corporation, Terex USA, Terex Services, Terex Services - Lancaster, Terex Utilities, John Doe 1 and/or John Doe 2 are a parent company(ies), controlling company(ies), holding company(ies), employer(s) of safety-related personnel, and/or otherwise exercised sufficient control over the design, manufacture, sale, assembly, distribution, service, and maintenance of the bucket truck that defendant(s) undertook a duty to Mr. Corry to provide a bucket truck that was not defective and was in a fit for service condition; the Defendants breached that duty and caused or contributed to the tip over and Mr. Corry's injuries.

56. Defendants are jointly and severally liable for the injuries and damages alleged.

## COUNT I – NEGLIGENCE
## <u>PLAINTIFF WILLIAM CORRY v.  TEREX CORPORATION</u>

57.    All prior paragraphs of this Complaint are incorporated by reference as if stated fully here.

58. At all times relevant hereto, Terex Corporation designed, assembled, manufactured, sold, distributed, and/or placed into the stream of commerce bucket trucks, including the subject bucket truck, that caused Plaintiff's injuries.

59. At all times relevant, Terex Corporation performed maintenance, service, rebuilds, and inspections on the bucket truck.

Case ID: 210602408

60. Terex Corporation owed a duty to those persons purchasing its products and using its products, including Mr. Corry, to provide a reasonably safe product, free from defects which could cause unreasonable hazards.

61. Terex Corporation knew, or should have known, of the dangerous condition of bucket trucks, which Terex Corporation intended its customers to use and/or operate.

62. Terex Corporation knew, or should have known, of the devastating injuries these bucket trucks would cause its customers during use and/or operation.

63. The negligence and wrongful conduct of Terex Corporation, its agents, servants and/or employees, which are the proximate cause of the accident described herein, and the injuries to Plaintiff, consisted of the following:

    a.    failing to properly design the bucket truck to assure operator safety;

    b.    failing to properly design the bucket truck to assure it would not tip over;

    c.    failing to design and/or utilize proper designs for the manufacture, assembly, sale, and distribution of the bucket truck so as to minimize the risk of injury or death to the bucket truck's operators;

    d.    failing to direct and require manufacturers/assemblers to adhere to applicable safety regulations and standards;

    e.    failing to adequately inform and warn purchasers and ultimate users of the bucket truck of the tip over hazards of the bucket truck;

    f.    failing to have adequate warnings on the bucket truck;

    g.    failing to provide adequate warnings to the ultimate users of the bucket truck;

    h.    failing to adequately inform or warn purchasers and end-users regarding the safe and proper method of preventing tip overs while operating the bucket truck;

Case ID: 210602408

i.     failing to adequately inform or warn purchasers and end-users of the bucket truck as to the proper procedures for inspecting, maintaining, repairing, and operating the bucket truck;

j.     designing, assembling, manufacturing, selling, supplying and distributing the bucket truck in a defective condition;

k.     designing, assembling, manufacturing, selling, supplying and distributing the bucket truck when it was unreasonably dangerous to the user;

l.     designing, assembling, manufacturing, selling, supplying and distributing the bucket truck which was not reasonably fit, suitable or safe for its intended and represented purpose;

m.     designing, assembling, manufacturing, selling, supplying and distributing the bucket truck when it lacked all of the necessary safety features to protect users of said product;

n.     designing, assembling, manufacturing, selling, supplying and distributing the bucket truck which could be designed more safely;

o.     designing, assembling, manufacturing, selling, supplying and distributing the bucket truck without appropriate safety devices;

p.     designing, assembling, manufacturing, selling, supplying and distributing the bucket truck without appropriate devices to prevent tip-over;

q.     failing to adequately, properly, and/or safely inspect or test the bucket truck or to make necessary corrections and adjustments, which would have revealed or remedied the defective condition;

r.     designing, assembling, manufacturing, selling, supplying and distributing the bucket truck with defective, inadequate, and/or malfunctioning outriggers;

s.     designing, assembling, manufacturing, selling, supplying and distributing a vehicle without properly functioning outriggers;

t.     designing, assembling, manufacturing, selling, supplying and distributing the bucket truck which lacked safety devices to prevent the bucket from elevating if outriggers were not down;

u.     designing, assembling, manufacturing, selling, supplying and distributing the bucket truck which lacked safety devices to prevent the elevator unit from raising if outriggers were not deployed;

13

Case ID: 210602408

v.    designing, assembling, manufacturing, selling, supplying and distributing the bucket truck which lacked an interlock to prevent the bucket from being raised to height if the outriggers were not deployed;

w.   designing, assembling, manufacturing, selling, supplying and distributing the bucket truck with defective, inadequate, and/or malfunctioning outriggers;

x.    designing, assembling, manufacturing, selling, supplying and distributing the bucket truck that did not deploy all of the outriggers;

y.    failing to incorporate safety measures into the bucket truck that would have prevented the risk of injury or death to its operators and passengers;

z.    failing to either know of prior accidents and injuries with the product and/or failing to correct and prevent the same accidents and injuries from reoccurring;

aa.   violating applicable state, local and/or industry standards;

bb.   designing, assembling, manufacturing, selling, supplying and/or distributing the bucket truck which could have been designed more safely;

cc.   failing to ensure that ultimate users were advised of the dangers of the bucket truck and how to use the bucket truck safely and to avoid injury;

dd.   failing to adequately and properly test the bucket truck, including but not limited to outriggers, after its design and/or assembly under reasonably foreseeable circumstances;

ee.   failing to properly test the component parts of the bucket truck, including but not limited to the outriggers, after the bucket truck's manufacture and prior to sale;

ff.   failing to properly test the component parts of the bucket truck, including but not limited to the outriggers, after the bucket truck was serviced, inspected and/or rebuilt;

gg.   failing to include effective outriggers that could prevent the bucket truck from involuntary movement;

hh.   failing to include effective outriggers that could prevent the bucket truck from tipping over;

ii.   failing to service, inspect, and/or maintain the outriggers on the bucket truck so as to prevent it from tipping over;

14

Case ID: 210602408

jj.     failing to adequately service, inspect, and/or maintain the outriggers on the bucket truck so as to prevent it from tipping over;

kk.     failing to provide warning regarding operating the truck on a slope;

ll.     failing to provide warning regarding the amount of slope that posed a danger to operating the bucket truck;

mm.     failing to recall and/or retrofit the bucket truck with proper safety features;

nn.     utilizing defective materials and componentry in the design and manufacture of the bucket truck;

oo.     designing, manufacturing, and selling a bucket truck that malfunctioned;

pp.     failing to adhere to sound engineering principles consistent with all data available regarding the parameters of intended use and expected environment in the design, testing, manufacture, servicing, inspecting, and/or maintaining of the bucket truck;

qq.     failing to exercise the requisite degree of care and caution in the designing, manufacturing, assembling, distributing, leasing, selling, servicing, inspecting, and/or maintaining of the bucket truck;

rr.     failing to properly service, inspect, and/or maintain the bucket truck;

ss.     failing to properly rebuild the bucket truck; and

tt.     failing to ensure the bucket truck was in a fit for service condition.

64.     By reason of the carelessness, negligence of Defendant Terex Corporation, as aforesaid, William Corry was caused to sustain severe and devastating injuries.

65.     By conducting itself in this manner, Defendant's acts and/or omissions were a substantial factor in, a factual cause of, and/or increased the risk of harm to Mr. Corry.

WHEREFORE, Plaintiff William Corry demands judgment against Terex Corporation in an amount in excess of Fifty Thousand Dollars ($50,000.00) in compensatory damages, delay damages pursuant to Pa.R.C.P. 238, interest and allowable costs of suit.

**COUNT II – STRICT LIABILITY**

**PLAINTIFF WILLIAM CORRY v. TEREX CORPORATION**

15

Case ID: 210602408

66.    All prior paragraphs of this Complaint are incorporated by reference as if stated fully here.

67. Terex Corporation manufactured, assembled, fabricated, and designed the subject bucket truck.

68. Terex Corporation, by and through its agents, servants, workers, contractors, designers, assemblers, manufacturers, sellers, suppliers, and distributors is strictly liable under § 402(A) of the Restatement (Second) of Torts because:

  a.  Terex Corporation is engaged in the regular business of designing, assembling, manufacturing, selling, supplying, distributing, and/or placing into the stream of commerce bucket trucks, such as the bucket truck that caused Mr. Corry's injuries;

  b.  The product involved in the subject incident was marketed and placed in the general stream of commerce by Terex Corporation;

  c.  The product was expected to and did reach users without substantial change in the condition in which it was designed, assembled, manufactured, sold, supplied, distributed, and/or placed into the stream of commerce;

  d.  The product was designed, assembled, manufactured, sold, supplied, distributed, and/or placed into the stream of commerce in the defective condition for the reasons set forth above and below.

  e.  The product was in a defective condition as: (1) the danger contained therein is unknowable and unacceptable to the average or ordinary consumer; and/or (2) a reasonable person would conclude that the probability and seriousness of the harm caused by the product outweigh the burden or costs of taking precautions.

  f.  The product was in a defective condition as it came with no warnings or information or inadequate warnings or information regarding the dangers and risks associated with the product.

69. The defective condition of the product caused Mr. Corry's injuries.

16

Case ID: 210602408

70. Terex Corporation, by and through its agents, servants, workers, contractors, designers, assemblers, manufacturers, sellers, suppliers, and distributors, are strictly liable under § 402(A) of the Restatement of the Law of Torts (Second), and pursuant to Tincher v. Omega Flex, 104 A.3d 328 (Pa. 2014) and its progeny by:

a.  designing, assembling, manufacturing, selling, supplying and distributing a product in a defective condition;

b.  designing, assembling, manufacturing, selling, supplying and/or distributing a product which was not safe for its intended and represented purposes;

c.  failing to have adequate warnings on the subject bucket truck;

d.  failing to provide adequate warnings to the ultimate users of the subject bucket truck;

e.  designing, assembling, manufacturing, selling, supplying and distributing a product that was unreasonably dangerous to the user;

f.  designing, assembling, manufacturing, selling, supplying and distributing a product which was not reasonably fit, suitable, or safe for its intended and represented purpose;

g.  designing, assembling, manufacturing, selling, supplying and distributing a product which lacked necessary safety features to protect users of said product;

h.  designing, assembling, manufacturing, selling, supplying and distributing the bucket truck without appropriate safety devices;

i.  designing, assembling, manufacturing, selling, supplying and/or distributing a product which could have been designed more safely;

j.  designing, assembling, manufacturing, selling, supplying and distributing a product without simple and cost-effective safety devices;

k.  designing, assembling, manufacturing, selling, supplying and distributing the bucket truck without appropriate devices to prevent tip-over;

l.  designing, assembling, manufacturing, selling, supplying and distributing a product with defective outriggers;

m.  designing, assembling, manufacturing, selling, supplying and distributing the bucket truck with inadequate, and/or malfunctioning outriggers;

17

Case ID: 210602408

n. designing, assembling, manufacturing, selling, supplying and distributing the bucket truck which lacked safety devices to prevent the elevator unit from raising if outriggers were not deployed;

o. designing, assembling, manufacturing, selling, supplying and distributing the bucket truck which lacked an interlock to prevent the bucket from being raised to height if the outriggers were not deployed;

p. designing, assembling, manufacturing, selling, supplying and distributing the bucket truck that did not deploy all of the outriggers;

q. designing, assembling, manufacturing, selling, supplying and distributing a vehicle without proper devices to prevent tip over;

r. failing to properly and reasonably design, manufacture, assemble, test and sell the subject truck with the outriggers and/or braking devises necessary to make the subject vehicle safe for its intended use;

s. failing to ensure that ultimate users were advised of the dangers of said product and how to use the product safely and to avoid injury;

t. failing to properly and reasonably warn the end user of the subject truck, including Plaintiff, of the dangers of using the brakes with the product;

u. designing, manufacturing, selling, supplying and distributing a bucket truck that when used properly would cause serious injury to the user; and

v. designing, manufacturing, and selling a bucket truck that malfunctioned.

71. By reason of the breach of duties—pursuant to § 402(A) of the Restatement of the Law of Torts (Second), and pursuant to <u>Tincher v. Omega Flex</u>, 104 A.3d 328 (Pa. 2014) and its progeny—Terex Corporation, by and through its agents, servants, workmen, contractors, suppliers, distributors and/or employees as aforesaid, caused Mr. Corry to sustain devastating and fatal injuries.

72. The bucket truck's defective condition was a cause of the injuries that Mr. Corry sustained.

18

Case ID: 210602408

73. Defendant Terex Corporation is strictly liable to Mr. Corry for the injuries and damages he suffered.

WHEREFORE, Plaintiff demands judgment in his favor and against Terex Corporation in an amount in excess of Fifty Thousand Dollars ($50,000.00) including delay damages, pursuant to Pa. R.C.P. 238, interest and allowable costs of suit and brings this action to recover the same.

**COUNT III – NEGLIGENCE**

**PLAINTIFF WILLIAM CORRY v.  TEREX USA, LLC**

74.    All prior paragraphs of this Complaint are incorporated by reference as if stated fully here.

75. At all times relevant hereto, Terex USA designed, assembled, manufactured, sold, distributed, and/or placed into the stream of commerce bucket trucks, including the subject bucket truck, that caused Plaintiff's injuries.

76. At all times relevant, Terex USA performed maintenance, service, rebuilds, and inspections on the bucket truck.

77. Terex USA owed a duty to those persons purchasing its products and using its products, including Mr. Corry, to provide a reasonably safe product, free from defects which could cause unreasonable hazards.

78. Terex USA knew, or should have known, of the dangerous condition of bucket trucks, which Terex USA intended its customers to use and/or operate.

79. Terex USA knew, or should have known, of the devastating injuries these bucket trucks would cause its customers during use and/or operation.

Case ID: 210602408

80. The negligence and wrongful conduct of Terex USA, its agents, servants and/or employees, which are the proximate cause of the accident described herein, and the injuries to Plaintiff, consisted of the following:

a. failing to properly design the bucket truck to assure operator safety;

b. failing to properly design the bucket truck to assure it would not tip over;

c. failing to design and/or utilize proper designs for the manufacture, assembly, sale, and distribution of the bucket truck so as to minimize the risk of injury or death to the bucket truck's operators;

d. failing to direct and require manufacturers/assemblers to adhere to applicable safety regulations and standards;

e. failing to adequately inform and warn purchasers and ultimate users of the bucket truck of the tip over hazards of the bucket truck;

f. failing to have adequate warnings on the bucket truck;

g. failing to provide adequate warnings to the ultimate users of the bucket truck;

h. failing to adequately inform or warn purchasers and end-users regarding the safe and proper method of preventing tip overs while operating the bucket truck;

i. failing to adequately inform or warn purchasers and end-users of the bucket truck as to the proper procedures for inspecting, maintaining, repairing, and operating the bucket truck;

j. designing, assembling, manufacturing, selling, supplying and distributing the bucket truck in a defective condition;

k. designing, assembling, manufacturing, selling, supplying and distributing the bucket truck when it was unreasonably dangerous to the user;

l. designing, assembling, manufacturing, selling, supplying and distributing the bucket truck which was not reasonably fit, suitable or safe for its intended and represented purpose;

m. designing, assembling, manufacturing, selling, supplying and distributing the bucket truck when it lacked all of the necessary safety features to protect users of said product;

20

Case ID: 210602408

n.     designing, assembling, manufacturing, selling, supplying and distributing the bucket truck which could be designed more safely;

o.     designing, assembling, manufacturing, selling, supplying and distributing the bucket truck without appropriate safety devices;

p.     designing, assembling, manufacturing, selling, supplying and distributing the bucket truck without appropriate devices to prevent tip-over;

q.     failing to adequately, properly, and/or safely inspect or test the bucket truck or to make necessary corrections and adjustments, which would have revealed or remedied the defective condition;

r.     designing, assembling, manufacturing, selling, supplying and distributing the bucket truck with defective, inadequate, and/or malfunctioning outriggers;

s.     designing, assembling, manufacturing, selling, supplying and distributing a vehicle without properly functioning outriggers;

t.     designing, assembling, manufacturing, selling, supplying and distributing the bucket truck which lacked safety devices to prevent the bucket from elevating if outriggers were not down;

u.     designing, assembling, manufacturing, selling, supplying and distributing the bucket truck which lacked safety devices to prevent the elevator unit from raising if outriggers were not deployed;

v.     designing, assembling, manufacturing, selling, supplying and distributing the bucket truck which lacked an interlock to prevent the bucket from being raised to height if the outriggers were not deployed;

w.     designing, assembling, manufacturing, selling, supplying and distributing the bucket truck with defective, inadequate, and/or malfunctioning outriggers;

x.     designing, assembling, manufacturing, selling, supplying and distributing the bucket truck that did not deploy all of the outriggers;

y.     failing to incorporate safety measures into the bucket truck that would have prevented the risk of injury or death to its operators and passengers;

z.     failing to either know of prior accidents and injuries with the product and/or failing to correct and prevent the same accidents and injuries from reoccurring;

aa.    violating applicable state, local and/or industry standards;

21

Case ID: 210602408

bb.  designing, assembling, manufacturing, selling, supplying and/or distributing the bucket truck which could have been designed more safely;

cc.  failing to ensure that ultimate users were advised of the dangers of the bucket truck and how to use the bucket truck safely and to avoid injury;

dd.  failing to adequately and properly test the bucket truck, including but not limited to outriggers, after its design and/or assembly under reasonably foreseeable circumstances;

ee.  failing to properly test the component parts of the bucket truck, including but not limited to the outriggers, after the bucket truck's manufacture and prior to sale;

ff.  failing to properly test the component parts of the bucket truck, including but not limited to the outriggers, after the bucket truck was serviced, inspected and/or rebuilt;

gg.  failing to include effective outriggers that could prevent the bucket truck from involuntary movement;

hh.  failing to include effective outriggers that could prevent the bucket truck from tipping over;

ii.  failing to service, inspect, and/or maintain the outriggers on the bucket truck so as to prevent it from tipping over;

jj.  failing to adequately service, inspect, and/or maintain the outriggers on the bucket truck so as to prevent it from tipping over;

kk.  failing to provide warning regarding operating the truck on a slope;

ll.  failing to provide warning regarding the amount of slope that posed a danger to operating the bucket truck;

mm.  failing to recall and/or retrofit the bucket truck with proper safety features;

nn.  utilizing defective materials and componentry in the design and manufacture of the bucket truck;

oo.  designing, manufacturing, and selling a bucket truck that malfunctioned;

pp.  failing to adhere to sound engineering principles consistent with all data available regarding the parameters of intended use and expected environment in the design, testing, manufacture, servicing, inspecting, and/or maintaining of the bucket truck;

Case ID: 210602408

qq.    failing to exercise the requisite degree of care and caution in the designing, manufacturing, assembling, distributing, leasing, selling, servicing, inspecting, and/or maintaining of the bucket truck;

rr.    failing to properly service, inspect, and/or maintain the bucket truck;

ss.    failing to properly rebuild the bucket truck; and

tt.    failing to ensure the bucket truck was in a fit for service condition.

81.    By reason of the carelessness, negligence of Defendant Terex USA, as aforesaid, William Corry was caused to sustain severe and devastating injuries.

82.    By conducting itself in this manner, Defendant's acts and/or omissions were a substantial factor in, a factual cause of, and/or increased the risk of harm to Mr. Corry.

WHEREFORE, Plaintiff William Corry demands judgment against Terex USA in an amount in excess of Fifty Thousand Dollars ($50,000.00) in compensatory damages, delay damages pursuant to Pa.R.C.P. 238, interest and allowable costs of suit.

## COUNT IV – STRICT LIABILITY

## <u>PLAINTIFF WILLIAM CORRY v.  TEREX USA, LLC</u>

83.    All prior paragraphs of this Complaint are incorporated by reference as if stated fully here.

84. Terex USA manufactured, assembled, fabricated, and designed the subject bucket truck.

85. Terex USA, by and through its agents, servants, workers, contractors, designers, assemblers, manufacturers, sellers, suppliers, and distributors is strictly liable under § 402(A) of the Restatement (Second) of Torts because:

Case ID: 210602408

a. Terex USA is engaged in the regular business of designing, assembling, manufacturing, selling, supplying, distributing, and/or placing into the stream of commerce bucket trucks, such as the truck that caused Mr. Corry's injuries;

b. The product involved in the subject incident was marketed and placed in the general stream of commerce by Terex USA;

c. The product was expected to and did reach users without substantial change in the condition in which it was designed, assembled, manufactured, sold, supplied, distributed, and/or placed into the stream of commerce;

d. The product was designed, assembled, manufactured, sold, supplied, distributed, and/or placed into the stream of commerce in the defective condition for the reasons set forth above and below.

e. The product was in a defective condition as: (1) the danger contained therein is unknowable and unacceptable to the average or ordinary consumer; and/or (2) a reasonable person would conclude that the probability and seriousness of the harm caused by the product outweigh the burden or costs of taking precautions.

f. The product was in a defective condition as it came with no warnings or information or inadequate warnings or information regarding the dangers and risks associated with the product.

86. The defective condition of the product caused Mr. Corry's injuries.

87. Terex USA, by and through its agents, servants, workers, contractors, designers, assemblers, manufacturers, sellers, suppliers, and distributors, are strictly liable under § 402(A) of the Restatement of the Law of Torts (Second), and pursuant to Tincher v. Omega Flex, 104 A.3d 328 (Pa. 2014) and its progeny by:

a. designing, assembling, manufacturing, selling, supplying and distributing a product in a defective condition;

b. designing, assembling, manufacturing, selling, supplying and/or distributing a product which was not safe for its intended and represented purposes;

c. failing to have adequate warnings on the subject bucket truck;

d. failing to provide adequate warnings to the ultimate users of the subject bucket truck;

24

Case ID: 210602408

e.  designing, assembling, manufacturing, selling, supplying and distributing a product that was unreasonably dangerous to the user;

f.  designing, assembling, manufacturing, selling, supplying and distributing a product which was not reasonably fit, suitable, or safe for its intended and represented purpose;

g.  designing, assembling, manufacturing, selling, supplying and distributing a product which lacked necessary safety features to protect users of said product;

h.  designing, assembling, manufacturing, selling, supplying and distributing the bucket truck without appropriate safety devices;

i.  designing, assembling, manufacturing, selling, supplying and/or distributing a product which could have been designed more safely;

j.  designing, assembling, manufacturing, selling, supplying and distributing a product without simple and cost-effective safety devices;

k.  designing, assembling, manufacturing, selling, supplying and distributing the bucket truck without appropriate devices to prevent tip-over;

l.  designing, assembling, manufacturing, selling, supplying and distributing a product with defective outriggers;

m.  designing, assembling, manufacturing, selling, supplying and distributing the bucket truck with inadequate, and/or malfunctioning outriggers;

n.  designing, assembling, manufacturing, selling, supplying and distributing the bucket truck which lacked safety devices to prevent the elevator unit from raising if outriggers were not deployed;

o.  designing, assembling, manufacturing, selling, supplying and distributing the bucket truck which lacked an interlock to prevent the bucket from being raised to height if the outriggers were not deployed;

p.  designing, assembling, manufacturing, selling, supplying and distributing the bucket truck that did not deploy all of the outriggers;

q.  designing, assembling, manufacturing, selling, supplying and distributing a vehicle without proper devices to prevent tip over;

r.  failing to properly and reasonably design, manufacture, assemble, test and sell the subject truck with the outriggers and/or braking devises necessary to make the subject vehicle safe for its intended use;

25

Case ID: 210602408

s.  failing to ensure that ultimate users were advised of the dangers of said product and how to use the product safely and to avoid injury;

t.  failing to properly and reasonably warn the end user of the subject truck, including Plaintiff, of the dangers of using the brakes with the product;

u.  designing, manufacturing, selling, supplying and distributing a bucket truck that when used properly would cause serious injury to the user; and

v.  designing, manufacturing, and selling a bucket truck that malfunctioned.

88. By reason of the breach of duties—pursuant to § 402(A) of the Restatement of the Law of Torts (Second), and pursuant to Tincher v. Omega Flex, 104 A.3d 328 (Pa. 2014) and its progeny—Terex USA, by and through its agents, servants, workmen, contractors, suppliers, distributors and/or employees as aforesaid, caused Mr. Corry to sustain devastating and fatal injuries.

89. The bucket truck's defective condition was a cause of the injuries that Mr. Corry sustained.

90. Defendant Terex USA is strictly liable to Mr. Corry for the injuries and damages he suffered.

WHEREFORE, Plaintiff William Corry demands judgment against Terex USA in an amount in excess of Fifty Thousand Dollars ($50,000.00) in compensatory damages, delay damages pursuant to Pa.R.C.P. 238, interest and allowable costs of suit.

Case ID: 210602408

## COUNT V – NEGLIGENCE

### PLAINTIFF WILLIAM CORRY v.  TEREX SERVICES and TEREX SERVICES - LANCASTER

91.     All prior paragraphs of this Complaint are incorporated by reference as if stated fully here.

92. At all times relevant hereto, the Terex Service Defendants designed, assembled, manufactured, sold, distributed, and/or placed into the stream of commerce bucket trucks, including the subject bucket truck, that caused Plaintiff's injuries.

93. At all times relevant, Terex Service Defendants performed maintenance, service, rebuilds, and inspections on the bucket truck.

94. The Terex Service Defendants owed a duty to those persons purchasing its products and using its products, including Mr. Corry, to provide a reasonably safe product, free from defects which could cause unreasonable hazards.

95. The Terex Service Defendants knew, or should have known, of the dangerous condition of bucket trucks, which Terex Service Defendants intended its customers to use and/or operate.

96. The Terex Service Defendants knew, or should have known, of the devastating injuries these bucket trucks would cause its customers during use and/or operation.

97. The negligence and wrongful conduct of the Terex Service Defendants, its agents, servants and/or employees, which are the proximate cause of the accident described herein, and the injuries to Plaintiff, consisted of the following:

Case ID: 210602408

a.    failing to properly design the bucket truck to assure operator safety;

b.    failing to properly design the bucket truck to assure it would not tip over;

c.    failing to design and/or utilize proper designs for the manufacture, assembly, sale, and distribution of the bucket truck so as to minimize the risk of injury or death to the bucket truck's operators;

d.    failing to direct and require manufacturers/assemblers to adhere to applicable safety regulations and standards;

e.    failing to adequately inform and warn purchasers and ultimate users of the bucket truck of the tip over hazards of the bucket truck;

f.    failing to have adequate warnings on the bucket truck;

g.    failing to provide adequate warnings to the ultimate users of the bucket truck;

h.    failing to adequately inform or warn purchasers and end-users regarding the safe and proper method of preventing tip overs while operating the bucket truck;

i.    failing to adequately inform or warn purchasers and end-users of the bucket truck as to the proper procedures for inspecting, maintaining, repairing, and operating the bucket truck;

j.    designing, assembling, manufacturing, selling, supplying and distributing the bucket truck in a defective condition;

k.    designing, assembling, manufacturing, selling, supplying and distributing the bucket truck when it was unreasonably dangerous to the user;

l.    designing, assembling, manufacturing, selling, supplying and distributing the bucket truck which was not reasonably fit, suitable or safe for its intended and represented purpose;

m.    designing, assembling, manufacturing, selling, supplying and distributing the bucket truck when it lacked all of the necessary safety features to protect users of said product;

n.    designing, assembling, manufacturing, selling, supplying and distributing the bucket truck which could be designed more safely;

o.    designing, assembling, manufacturing, selling, supplying and distributing the bucket truck without appropriate safety devices;

Case ID: 210602408

p.    designing, assembling, manufacturing, selling, supplying and distributing the bucket truck without appropriate devices to prevent tip-over;

q.    failing to adequately, properly, and/or safely inspect or test the bucket truck or to make necessary corrections and adjustments, which would have revealed or remedied the defective condition;

r.    designing, assembling, manufacturing, selling, supplying and distributing the bucket truck with defective, inadequate, and/or malfunctioning outriggers;

s.    designing, assembling, manufacturing, selling, supplying and distributing a vehicle without properly functioning outriggers;

t.    designing, assembling, manufacturing, selling, supplying and distributing the bucket truck which lacked safety devices to prevent the bucket from elevating if outriggers were not down;

u.    designing, assembling, manufacturing, selling, supplying and distributing the bucket truck which lacked safety devices to prevent the elevator unit from raising if outriggers were not deployed;

v.    designing, assembling, manufacturing, selling, supplying and distributing the bucket truck which lacked an interlock to prevent the bucket from being raised to height if the outriggers were not deployed;

w.    designing, assembling, manufacturing, selling, supplying and distributing the bucket truck with defective, inadequate, and/or malfunctioning outriggers;

x.    designing, assembling, manufacturing, selling, supplying and distributing the bucket truck that did not deploy all of the outriggers;

y.    failing to incorporate safety measures into the bucket truck that would have prevented the risk of injury or death to its operators and passengers;

z.    failing to either know of prior accidents and injuries with the product and/or failing to correct and prevent the same accidents and injuries from reoccurring;

aa.    violating applicable state, local and/or industry standards;

bb.    designing, assembling, manufacturing, selling, supplying and/or distributing the bucket truck which could have been designed more safely;

cc.    failing to ensure that ultimate users were advised of the dangers of the bucket truck and how to use the bucket truck safely and to avoid injury;

Case ID: 210602408

dd.   failing to adequately and properly test the bucket truck, including but not limited to outriggers, after its design and/or assembly under reasonably foreseeable circumstances;

ee.   failing to properly test the component parts of the bucket truck, including but not limited to the outriggers, after the bucket truck's manufacture and prior to sale;

ff.   failing to properly test the component parts of the bucket truck, including but not limited to the outriggers, after the bucket truck was serviced, inspected and/or rebuilt;

gg.   failing to include effective outriggers that could prevent the bucket truck from involuntary movement;

hh.   failing to include effective outriggers that could prevent the bucket truck from tipping over;

ii.   failing to service, inspect, and/or maintain the outriggers on the bucket truck so as to prevent it from tipping over;

jj.   failing to adequately service, inspect, and/or maintain the outriggers on the bucket truck so as to prevent it from tipping over;

kk.   failing to provide warning regarding operating the truck on a slope;

ll.   failing to provide warning regarding the amount of slope that posed a danger to operating the bucket truck;

mm.   failing to recall and/or retrofit the bucket truck with proper safety features;

nn.   utilizing defective materials and componentry in the design and manufacture of the bucket truck;

oo.   designing, manufacturing, and selling a bucket truck that malfunctioned;

pp.   failing to adhere to sound engineering principles consistent with all data available regarding the parameters of intended use and expected environment in the design, testing, manufacture, servicing, inspecting, and/or maintaining of the bucket truck;

qq.   failing to exercise the requisite degree of care and caution in the designing, manufacturing, assembling, distributing, leasing, selling, servicing, inspecting, and/or maintaining of the bucket truck;

rr.   failing to properly service, inspect, and/or maintain the bucket truck;

ss.   failing to properly rebuild the bucket truck; and

Case ID: 210602408

tt.    failing to ensure the bucket truck was in a fit for service condition.

98.    By reason of the carelessness, negligence of the Terex Service Defendants, as aforesaid, William Corry was caused to sustain severe and devastating injuries.

99.    By conducting itself in this manner, Defendants' acts and/or omissions were a substantial factor in, a factual cause of, and/or increased the risk of harm to Mr. Corry.

WHEREFORE, Plaintiff demands judgment in his favor and against both Terex Services and Terex Services – Lancaster in an amount in excess of Fifty Thousand Dollars ($50,000.00), per defendant, including delay damages, pursuant to Pa. R.C.P. 238, interest and allowable costs of suit and brings this action to recover the same.

## COUNT VI – STRICT LIABILITY

### PLAINTIFF WILLIAM CORRY v.  TEREX SERVICES and TEREX SERVICES – LANCASTER

100.    All prior paragraphs of this Complaint are incorporated by reference as if stated fully here.

101.    The Terex Service Defendants manufactured, assembled, fabricated, and designed the subject bucket truck.

102.    The Terex Service Defendants, by and through their agents, servants, workers, contractors, designers, assemblers, manufacturers, sellers, suppliers, and distributors is strictly liable under § 402(A) of the Restatement (Second) of Torts because:

a.    The Terex Service Defendants are engaged in the regular business of designing, assembling, manufacturing, selling, supplying, distributing, and/or placing into the stream of commerce bucket trucks, such as the truck that caused Mr. Corry's injuries;

b.    The product involved in the subject incident was marketed and placed in the general stream of commerce by the Terex Service Defendants;

31

Case ID: 210602408

c. The product was expected to and did reach users without substantial change in the condition in which it was designed, assembled, manufactured, sold, supplied, distributed, and/or placed into the stream of commerce;

d. The product was designed, assembled, manufactured, sold, supplied, distributed, and/or placed into the stream of commerce in the defective condition for the reasons set forth above and below.

e. The product was in a defective condition as: (1) the danger contained therein is unknowable and unacceptable to the average or ordinary consumer; and/or (2) a reasonable person would conclude that the probability and seriousness of the harm caused by the product outweigh the burden or costs of taking precautions.

f. The product was in a defective condition as it came with no warnings or information or inadequate warnings or information regarding the dangers and risks associated with the product.

103. The defective condition of the product caused Mr. Corry's injuries.

104. The Terex Service Defendants, by and through their agents, servants, workers, contractors, designers, assemblers, manufacturers, sellers, suppliers, and distributors, are strictly liable under § 402(A) of the Restatement of the Law of Torts (Second), and pursuant to Tincher v. Omega Flex, 104 A.3d 328 (Pa. 2014) and its progeny by:

a. designing, assembling, manufacturing, selling, supplying and distributing a product in a defective condition;

b. designing, assembling, manufacturing, selling, supplying and/or distributing a product which was not safe for its intended and represented purposes;

c. failing to have adequate warnings on the subject bucket truck;

d. failing to provide adequate warnings to the ultimate users of the subject bucket truck;

e. designing, assembling, manufacturing, selling, supplying and distributing a product that was unreasonably dangerous to the user;

Case ID: 210602408

f.  designing, assembling, manufacturing, selling, supplying and distributing a product which was not reasonably fit, suitable, or safe for its intended and represented purpose;

g.  designing, assembling, manufacturing, selling, supplying and distributing a product which lacked necessary safety features to protect users of said product;

h.  designing, assembling, manufacturing, selling, supplying and distributing the bucket truck without appropriate safety devices;

i.  designing, assembling, manufacturing, selling, supplying and/or distributing a product which could have been designed more safely;

j.  designing, assembling, manufacturing, selling, supplying and distributing a product without simple and cost-effective safety devices;

k.  designing, assembling, manufacturing, selling, supplying and distributing the bucket truck without appropriate devices to prevent tip-over;

l.  designing, assembling, manufacturing, selling, supplying and distributing a product with defective outriggers;

m.  designing, assembling, manufacturing, selling, supplying and distributing the bucket truck with inadequate, and/or malfunctioning outriggers;

n.  designing, assembling, manufacturing, selling, supplying and distributing the bucket truck which lacked safety devices to prevent the elevator unit from raising if outriggers were not deployed;

o.  designing, assembling, manufacturing, selling, supplying and distributing the bucket truck which lacked an interlock to prevent the bucket from being raised to height if the outriggers were not deployed;

p.  designing, assembling, manufacturing, selling, supplying and distributing the bucket truck that did not deploy all of the outriggers;

q.  designing, assembling, manufacturing, selling, supplying and distributing a vehicle without proper devices to prevent tip over;

r.  failing to properly and reasonably design, manufacture, assemble, test and sell the subject truck with the outriggers and/or braking devises necessary to make the subject vehicle safe for its intended use;

s.  failing to ensure that ultimate users were advised of the dangers of said product and how to use the product safely and to avoid injury;

33

Case ID: 210602408

t.   failing to properly and reasonably warn the end user of the subject truck, including Plaintiff, of the dangers of using the brakes with the product;

u.   designing, manufacturing, selling, supplying and distributing a bucket truck that when used properly would cause serious injury to the user; and

v.   designing, manufacturing, and selling a bucket truck that malfunctioned.

105.   By reason of the breach of duties—pursuant to § 402(A) of the Restatement of the Law of Torts (Second), and pursuant to Tincher v. Omega Flex, 104 A.3d 328 (Pa. 2014) and its progeny— the Terex Service Defendants, by and through their agents, servants, workmen, contractors, suppliers, distributors and/or employees as aforesaid, caused Mr. Corry to sustain devastating and fatal injuries.

106.   The bucket truck's defective condition was a cause of the injuries that Mr. Corry sustained.

107.   The Terex Service Defendants are strictly liable to Mr. Corry for the injuries and damages he suffered.

WHEREFORE, Plaintiff demands judgment in his favor and against both Terex Services and Terex Services – Lancaster in an amount in excess of Fifty Thousand Dollars ($50,000.00), per defendant, including delay damages, pursuant to Pa. R.C.P. 238, interest and allowable costs of suit and brings this action to recover the same.

## COUNT VII – NEGLIGENCE

## PLAINTIFF WILLIAM CORRY v.  TEREX UTILITIES, INC.

108.   All prior paragraphs of this Complaint are incorporated by reference as if stated fully here.

Case ID: 210602408

109.   At all times relevant hereto, Terex Utilities designed, assembled, manufactured, sold, distributed, and/or placed into the stream of commerce bucket trucks, including the subject bucket truck, that caused Plaintiff's injuries.

110.   At all times relevant, Terex Utilities performed maintenance, service, rebuilds, and inspections on the bucket truck.

111.   Terex Utilities owed a duty to those persons purchasing its products and using its products, including Mr. Corry, to provide a reasonably safe product, free from defects which could cause unreasonable hazards.

112.   Terex Utilities knew, or should have known, of the dangerous condition of bucket trucks, which Terex Utilities intended its customers to use and/or operate.

113.   Terex Utilities knew, or should have known, of the devastating injuries these bucket trucks would cause its customers during use and/or operation.

114.   The negligence and wrongful conduct of Terex Utilities, its agents, servants and/or employees, which are the proximate cause of the accident described herein, and the injuries to Plaintiff, consisted of the following:

   a.   failing to properly design the bucket truck to assure operator safety;

   b.   failing to properly design the bucket truck to assure it would not tip over;

   c.   failing to design and/or utilize proper designs for the manufacture, assembly, sale, and distribution of the bucket truck so as to minimize the risk of injury or death to the bucket truck's operators;

   d.   failing to direct and require manufacturers/assemblers to adhere to applicable safety regulations and standards;

35

Case ID: 210602408

e.     failing to adequately inform and warn purchasers and ultimate users of the bucket truck of the tip over hazards of the bucket truck;

f.     failing to have adequate warnings on the bucket truck;

g.     failing to provide adequate warnings to the ultimate users of the bucket truck;

h.     failing to adequately inform or warn purchasers and end-users regarding the safe and proper method of preventing tip overs while operating the bucket truck;

i.     failing to adequately inform or warn purchasers and end-users of the bucket truck as to the proper procedures for inspecting, maintaining, repairing, and operating the bucket truck;

j.     designing, assembling, manufacturing, selling, supplying and distributing the bucket truck in a defective condition;

k.     designing, assembling, manufacturing, selling, supplying and distributing the bucket truck when it was unreasonably dangerous to the user;

l.     designing, assembling, manufacturing, selling, supplying and distributing the bucket truck which was not reasonably fit, suitable or safe for its intended and represented purpose;

m.     designing, assembling, manufacturing, selling, supplying and distributing the bucket truck when it lacked all of the necessary safety features to protect users of said product;

n.     designing, assembling, manufacturing, selling, supplying and distributing the bucket truck which could be designed more safely;

o.     designing, assembling, manufacturing, selling, supplying and distributing the bucket truck without appropriate safety devices;

p.     designing, assembling, manufacturing, selling, supplying and distributing the bucket truck without appropriate devices to prevent tip-over;

q.     failing to adequately, properly, and/or safely inspect or test the bucket truck or to make necessary corrections and adjustments, which would have revealed or remedied the defective condition;

r.     designing, assembling, manufacturing, selling, supplying and distributing the bucket truck with defective, inadequate, and/or malfunctioning outriggers;

Case ID: 210602408

s.   designing, assembling, manufacturing, selling, supplying and distributing a vehicle without properly functioning outriggers;

t.   designing, assembling, manufacturing, selling, supplying and distributing the bucket truck which lacked safety devices to prevent the bucket from elevating if outriggers were not down;

u.   designing, assembling, manufacturing, selling, supplying and distributing the bucket truck which lacked safety devices to prevent the elevator unit from raising if outriggers were not deployed;

v.   designing, assembling, manufacturing, selling, supplying and distributing the bucket truck which lacked an interlock to prevent the bucket from being raised to height if the outriggers were not deployed;

w.   designing, assembling, manufacturing, selling, supplying and distributing the bucket truck with defective, inadequate, and/or malfunctioning outriggers;

x.   designing, assembling, manufacturing, selling, supplying and distributing the bucket truck that did not deploy all of the outriggers;

y.   failing to incorporate safety measures into the bucket truck that would have prevented the risk of injury or death to its operators and passengers;

z.   failing to either know of prior accidents and injuries with the product and/or failing to correct and prevent the same accidents and injuries from reoccurring;

aa.   violating applicable state, local and/or industry standards;

bb.   designing, assembling, manufacturing, selling, supplying and/or distributing the bucket truck which could have been designed more safely;

cc.   failing to ensure that ultimate users were advised of the dangers of the bucket truck and how to use the bucket truck safely and to avoid injury;

dd.   failing to adequately and properly test the bucket truck, including but not limited to outriggers, after its design and/or assembly under reasonably foreseeable circumstances;

ee.   failing to properly test the component parts of the bucket truck, including but not limited to the outriggers, after the bucket truck's manufacture and prior to sale;

ff.   failing to properly test the component parts of the bucket truck, including but not limited to the outriggers, after the bucket truck was serviced, inspected and/or rebuilt;

37

Case ID: 210602408

gg.    failing to include effective outriggers that could prevent the bucket truck from involuntary movement;

hh.    failing to include effective outriggers that could prevent the bucket truck from tipping over;

ii.    failing to service, inspect, and/or maintain the outriggers on the bucket truck so as to prevent it from tipping over;

jj.    failing to adequately service, inspect, and/or maintain the outriggers on the bucket truck so as to prevent it from tipping over;

kk.    failing to provide warning regarding operating the truck on a slope;

ll.    failing to provide warning regarding the amount of slope that posed a danger to operating the bucket truck;

mm.    failing to recall and/or retrofit the bucket truck with proper safety features;

nn.    utilizing defective materials and componentry in the design and manufacture of the bucket truck;

oo.    designing, manufacturing, and selling a bucket truck that malfunctioned;

pp.    failing to adhere to sound engineering principles consistent with all data available regarding the parameters of intended use and expected environment in the design, testing, manufacture, servicing, inspecting, and/or maintaining of the bucket truck;

qq.    failing to exercise the requisite degree of care and caution in the designing, manufacturing, assembling, distributing, leasing, selling, servicing, inspecting, and/or maintaining of the bucket truck;

rr.    failing to properly service, inspect, and/or maintain the bucket truck;

ss.    failing to properly rebuild the bucket truck; and

tt.    failing to ensure the bucket truck was in a fit for service condition.

115.    By reason of the carelessness, negligence of Terex Utilities, as aforesaid, William Corry was caused to sustain severe and devastating injuries.

116.    By conducting itself in this manner, Defendants' acts and/or omissions were a substantial factor in, a factual cause of, and/or increased the risk of harm to Mr. Corry.

Case ID: 210602408

WHEREFORE, Plaintiff demands judgment in his favor and against Terex Utilities in an amount in excess of Fifty Thousand Dollars ($50,000.00), including delay damages, pursuant to Pa. R.C.P. 238, interest and allowable costs of suit and brings this action to recover the same.

### COUNT VIII – STRICT LIABILITY

### PLAINTIFF WILLIAM CORRY v.  TEREX UTILITIES, INC.

117.   All prior paragraphs of this Complaint are incorporated by reference as if stated fully here.

118.   Terex Utilities manufactured, assembled, fabricated, and designed the subject bucket truck.

119.   Terex Utilities, by and through its agents, servants, workers, contractors, designers, assemblers, manufacturers, sellers, suppliers, and distributors is strictly liable under § 402(A) of the Restatement (Second) of Torts because:

a.   Terex Utilities is engaged in the regular business of designing, assembling, manufacturing, selling, supplying, distributing, and/or placing into the stream of commerce bucket trucks, such as the truck that caused Mr. Corry's injuries;

b.   The product involved in the subject incident was marketed and placed in the general stream of commerce by Terex Utilities;

c.   The product was expected to and did reach users without substantial change in the condition in which it was designed, assembled, manufactured, sold, supplied, distributed, and/or placed into the stream of commerce;

d.   The product was designed, assembled, manufactured, sold, supplied, distributed, and/or placed into the stream of commerce in the defective condition for the reasons set forth above and below.

e.   The product was in a defective condition as: (1) the danger contained therein is unknowable and unacceptable to the average or ordinary consumer; and/or (2) a reasonable person would conclude that the probability and seriousness of the harm caused by the product outweigh the burden or costs of taking precautions.

39

Case ID: 210602408

f.  The product was in a defective condition as it came with no warnings or information or inadequate warnings or information regarding the dangers and risks associated with the product.

120.  The defective condition of the product caused Mr. Corry's injuries.

121.  Terex Utilities, by and through its agents, servants, workers, contractors, designers, assemblers, manufacturers, sellers, suppliers, and distributors, are strictly liable under § 402(A) of the Restatement of the Law of Torts (Second), and pursuant to <u>Tincher v. Omega Flex</u>, 104 A.3d 328 (Pa. 2014) and its progeny by:

a.  designing, assembling, manufacturing, selling, supplying and distributing a product in a defective condition;

b.  designing, assembling, manufacturing, selling, supplying and/or distributing a product which was not safe for its intended and represented purposes;

c.  failing to have adequate warnings on the subject bucket truck;

d.  failing to provide adequate warnings to the ultimate users of the subject bucket truck;

e.  designing, assembling, manufacturing, selling, supplying and distributing a product that was unreasonably dangerous to the user;

f.  designing, assembling, manufacturing, selling, supplying and distributing a product which was not reasonably fit, suitable, or safe for its intended and represented purpose;

g.  designing, assembling, manufacturing, selling, supplying and distributing a product which lacked necessary safety features to protect users of said product;

h.  designing, assembling, manufacturing, selling, supplying and distributing the bucket truck without appropriate safety devices;

i.  designing, assembling, manufacturing, selling, supplying and/or distributing a product which could have been designed more safely;

j.  designing, assembling, manufacturing, selling, supplying and distributing a product without simple and cost-effective safety devices;

Case ID: 210602408

k.   designing, assembling, manufacturing, selling, supplying and distributing the bucket truck without appropriate devices to prevent tip-over;

l.   designing, assembling, manufacturing, selling, supplying and distributing a product with defective outriggers;

m.   designing, assembling, manufacturing, selling, supplying and distributing the bucket truck with inadequate, and/or malfunctioning outriggers;

n.   designing, assembling, manufacturing, selling, supplying and distributing the bucket truck which lacked safety devices to prevent the elevator unit from raising if outriggers were not deployed;

o.   designing, assembling, manufacturing, selling, supplying and distributing the bucket truck which lacked an interlock to prevent the bucket from being raised to height if the outriggers were not deployed;

p.   designing, assembling, manufacturing, selling, supplying and distributing the bucket truck that did not deploy all of the outriggers;

q.   designing, assembling, manufacturing, selling, supplying and distributing a vehicle without proper devices to prevent tip over;

r.   failing to properly and reasonably design, manufacture, assemble, test and sell the subject truck with the outriggers and/or braking devises necessary to make the subject vehicle safe for its intended use;

s.   failing to ensure that ultimate users were advised of the dangers of said product and how to use the product safely and to avoid injury;

t.   failing to properly and reasonably warn the end user of the subject truck, including Plaintiff, of the dangers of using the brakes with the product;

u.   designing, manufacturing, selling, supplying and distributing a bucket truck that when used properly would cause serious injury to the user; and

v.   designing, manufacturing, and selling a bucket truck that malfunctioned.

122.   By reason of the breach of duties—pursuant to § 402(A) of the Restatement of the Law of Torts (Second), and pursuant to <u>Tincher v. Omega Flex</u>, 104 A.3d 328 (Pa. 2014) and its progeny— Terex Utilities, by and through its agents, servants, workmen, contractors, suppliers,

41

Case ID: 210602408

distributors and/or employees as aforesaid, caused Mr. Corry to sustain devastating and fatal injuries.

123.   The bucket truck's defective condition was a cause of the injuries that Mr. Corry sustained.

124.   Terex Utilities is strictly liable to Mr. Corry for the injuries and damages he suffered.

WHEREFORE, Plaintiff demands judgment in his favor and against Terex Utilities, Inc. an amount in excess of Fifty Thousand Dollars ($50,000.00), including delay damages, pursuant to Pa. R.C.P. 238, interest and allowable costs of suit and brings this action to recover the same.

## COUNT IX – NEGLIGENCE
## PLAINTIFF WILLIAM CORRY v.  DUECO, INC.

125.   All prior paragraphs of this Complaint are incorporated by reference as if stated fully here.

126.   At all times relevant hereto, Dueco designed, assembled, manufactured, sold, distributed, and/or placed into the stream of commerce bucket trucks, including the subject bucket truck, that caused Plaintiff's injuries.

127.   At all times relevant hereto, Dueco designed, assembled, manufactured, sold, distributed, and/or placed into the stream of commerce bucket trucks, including the subject bucket truck, that caused Plaintiff's injuries.

42

Case ID: 210602408

128.   At all times relevant, Dueco performed maintenance, service, rebuilds, and inspections on the bucket truck.

129.   Dueco owed a duty to those persons purchasing its products and using its products, including Mr. Corry, to provide a reasonably safe product, free from defects which could cause unreasonable hazards.

130.   Dueco knew, or should have known, of the dangerous condition of bucket trucks, which Terex Utilities intended its customers to use and/or operate.

131.   Dueco knew, or should have known, of the devastating injuries these bucket trucks would cause its customers during use and/or operation.

132.   The negligence and wrongful conduct of Dueco and/or Dueco's successors of liabilities, its agents, servants and/or employees, which are the proximate cause of the accident described herein, and the injuries to Plaintiff, consisted of the following:

    a.   failing to properly design the bucket truck to assure operator safety;

    b.   failing to properly design the bucket truck to assure it would not tip over;

    c.   failing to design and/or utilize proper designs for the manufacture, assembly, sale, and distribution of the bucket truck so as to minimize the risk of injury or death to the bucket truck's operators;

    d.   failing to direct and require manufacturers/assemblers to adhere to applicable safety regulations and standards;

    e.   failing to adequately inform and warn purchasers and ultimate users of the bucket truck of the tip over hazards of the bucket truck;

    f.   failing to have adequate warnings on the bucket truck;

    g.   failing to provide adequate warnings to the ultimate users of the bucket truck;

43

Case ID: 210602408

h.      failing to adequately inform or warn purchasers and end-users regarding the safe and proper method of preventing tip overs while operating the bucket truck;

i.      failing to adequately inform or warn purchasers and end-users of the bucket truck as to the proper procedures for inspecting, maintaining, repairing, and operating the bucket truck;

j.      designing, assembling, manufacturing, selling, supplying and distributing the bucket truck in a defective condition;

k.      designing, assembling, manufacturing, selling, supplying and distributing the bucket truck when it was unreasonably dangerous to the user;

l.      designing, assembling, manufacturing, selling, supplying and distributing the bucket truck which was not reasonably fit, suitable or safe for its intended and represented purpose;

m.      designing, assembling, manufacturing, selling, supplying and distributing the bucket truck when it lacked all of the necessary safety features to protect users of said product;

n.      designing, assembling, manufacturing, selling, supplying and distributing the bucket truck which could be designed more safely;

o.      designing, assembling, manufacturing, selling, supplying and distributing the bucket truck without appropriate safety devices;

p.      designing, assembling, manufacturing, selling, supplying and distributing the bucket truck without appropriate devices to prevent tip-over;

q.      failing to adequately, properly, and/or safely inspect or test the bucket truck or to make necessary corrections and adjustments, which would have revealed or remedied the defective condition;

r.      designing, assembling, manufacturing, selling, supplying and distributing the bucket truck with defective, inadequate, and/or malfunctioning outriggers;

s.      designing, assembling, manufacturing, selling, supplying and distributing a vehicle without properly functioning outriggers;

t.      designing, assembling, manufacturing, selling, supplying and distributing the bucket truck which lacked safety devices to prevent the bucket from elevating if outriggers were not down;

44

Case ID: 210602408

u.     designing, assembling, manufacturing, selling, supplying and distributing the bucket truck which lacked safety devices to prevent the elevator unit from raising if outriggers were not deployed;

v.     designing, assembling, manufacturing, selling, supplying and distributing the bucket truck which lacked an interlock to prevent the bucket from being raised to height if the outriggers were not deployed;

w.     designing, assembling, manufacturing, selling, supplying and distributing the bucket truck with defective, inadequate, and/or malfunctioning outriggers;

x.     designing, assembling, manufacturing, selling, supplying and distributing the bucket truck that did not deploy all of the outriggers;

y.     failing to incorporate safety measures into the bucket truck that would have prevented the risk of injury or death to its operators and passengers;

z.     failing to either know of prior accidents and injuries with the product and/or failing to correct and prevent the same accidents and injuries from reoccurring;

aa.     violating applicable state, local and/or industry standards;

bb.     designing, assembling, manufacturing, selling, supplying and/or distributing the bucket truck which could have been designed more safely;

cc.     failing to ensure that ultimate users were advised of the dangers of the bucket truck and how to use the bucket truck safely and to avoid injury;

dd.     failing to adequately and properly test the bucket truck, including but not limited to outriggers, after its design and/or assembly under reasonably foreseeable circumstances;

ee.     failing to properly test the component parts of the bucket truck, including but not limited to the outriggers, after the bucket truck's manufacture and prior to sale;

ff.     failing to properly test the component parts of the bucket truck, including but not limited to the outriggers, after the bucket truck was serviced, inspected and/or rebuilt;

gg.     failing to include effective outriggers that could prevent the bucket truck from involuntary movement;

hh.     failing to include effective outriggers that could prevent the bucket truck from tipping over;

Case ID: 210602408

ii.  failing to service, inspect, and/or maintain the outriggers on the bucket truck so as to prevent it from tipping over;

jj.  failing to adequately service, inspect, and/or maintain the outriggers on the bucket truck so as to prevent it from tipping over;

kk.  failing to provide warning regarding operating the truck on a slope;

ll.  failing to provide warning regarding the amount of slope that posed a danger to operating the bucket truck;

mm.  failing to recall and/or retrofit the bucket truck with proper safety features;

nn.  utilizing defective materials and componentry in the design and manufacture of the bucket truck;

oo.  designing, manufacturing, and selling a bucket truck that malfunctioned;

pp.  failing to adhere to sound engineering principles consistent with all data available regarding the parameters of intended use and expected environment in the design, testing, manufacture, servicing, inspecting, and/or maintaining of the bucket truck;

qq.  failing to exercise the requisite degree of care and caution in the designing, manufacturing, assembling, distributing, leasing, selling, servicing, inspecting, and/or maintaining of the bucket truck;

rr.  failing to properly service, inspect, and/or maintain the bucket truck;

ss.  failing to properly rebuild the bucket truck; and

tt.  failing to ensure the bucket truck was in a fit for service condition.

133.  By reason of the carelessness, negligence of Defendant Dueco, as aforesaid, William Corry was caused to sustain severe and devastating injuries.

134.  By conducting itself in this manner, Defendant's acts and/or omissions were a substantial factor in, a factual cause of, and/or increased the risk of harm to Mr. Corry.

WHEREFORE, Plaintiff William Corry demands judgment against Dueco, Inc., and/or Dueco's successors of liabilities, in an amount in excess of Fifty Thousand Dollars ($50,000.00) in compensatory damages, delay damages pursuant to Pa.R.C.P. 238, interest and allowable costs of suit.

46

Case ID: 210602408

## COUNT X – STRICT LIABILITY

## **PLAINTIFF WILLIAM CORRY v.  DUECO, INC.**

135.   All prior paragraphs of this Complaint are incorporated by reference as if stated fully here.

136.   Dueco manufactured, assembled, fabricated, and designed the subject bucket truck.

137.   Dueco, and/or Dueco's successors of liabilities, by and through its agents, servants, workers, contractors, designers, assemblers, manufacturers, sellers, suppliers, and distributors is strictly liable under § 402(A) of the Restatement (Second) of Torts because:

a.   Dueco is engaged in the regular business of designing, assembling, manufacturing, selling, supplying, distributing, and/or placing into the stream of commerce bucket trucks, such as the bucket truck that caused Mr. Corry's injuries;

b.   The product involved in the subject incident was marketed and placed in the general stream of commerce by Dueco;

c.   The product was expected to and did reach users without substantial change in the condition in which it was designed, assembled, manufactured, sold, supplied, distributed, and/or placed into the stream of commerce;

d.   The product was designed, assembled, manufactured, sold, supplied, distributed, and/or placed into the stream of commerce in the defective condition for the reasons set forth above and below.

e.   The product was in a defective condition as: (1) the danger contained therein is unknowable and unacceptable to the average or ordinary consumer; and/or (2) a reasonable person would conclude that the probability and seriousness of the harm caused by the product outweigh the burden or costs of taking precautions.

f.   The product was in a defective condition as it came with no warnings or information or inadequate warnings or information regarding the dangers and risks associated with the product.

138.   The defective condition of the product caused Mr. Corry's injuries.

Case ID: 210602408

139.   Dueco, and/or Dueco's successors of liabilities, by and through its agents, servants, workers, contractors, designers, assemblers, manufacturers, sellers, suppliers, and distributors, are strictly liable under § 402(A) of the Restatement of the Law of Torts (Second), and pursuant to <u>Tincher v. Omega Flex</u>, 104 A.3d 328 (Pa. 2014) and its progeny by:

    a.   designing, assembling, manufacturing, selling, supplying and distributing a product in a defective condition;

    b.   designing, assembling, manufacturing, selling, supplying and/or distributing a product which was not safe for its intended and represented purposes;

    c.   failing to have adequate warnings on the subject bucket truck;

    d.   failing to provide adequate warnings to the ultimate users of the subject bucket truck;

    e.   designing, assembling, manufacturing, selling, supplying and distributing a product that was unreasonably dangerous to the user;

    f.   designing, assembling, manufacturing, selling, supplying and distributing a product which was not reasonably fit, suitable, or safe for its intended and represented purpose;

    g.   designing, assembling, manufacturing, selling, supplying and distributing a product which lacked necessary safety features to protect users of said product;

    h.   designing, assembling, manufacturing, selling, supplying and distributing the bucket truck without appropriate safety devices;

    i.   designing, assembling, manufacturing, selling, supplying and/or distributing a product which could have been designed more safely;

    j.   designing, assembling, manufacturing, selling, supplying and distributing a product without simple and cost-effective safety devices;

    k.   designing, assembling, manufacturing, selling, supplying and distributing the bucket truck without appropriate devices to prevent tip-over;

    l.   designing, assembling, manufacturing, selling, supplying and distributing a product with defective outriggers;

    m.   designing, assembling, manufacturing, selling, supplying and distributing the bucket truck with inadequate, and/or malfunctioning outriggers;

Case ID: 210602408

n.  designing, assembling, manufacturing, selling, supplying and distributing the bucket truck which lacked safety devices to prevent the elevator unit from raising if outriggers were not deployed;

o.  designing, assembling, manufacturing, selling, supplying and distributing the bucket truck which lacked an interlock to prevent the bucket from being raised to height if the outriggers were not deployed;

p.  designing, assembling, manufacturing, selling, supplying and distributing the bucket truck that did not deploy all of the outriggers;

q.  designing, assembling, manufacturing, selling, supplying and distributing a vehicle without proper devices to prevent tip over;

r.  failing to properly and reasonably design, manufacture, assemble, test and sell the subject truck with the outriggers and/or braking devises necessary to make the subject vehicle safe for its intended use;

s.  failing to ensure that ultimate users were advised of the dangers of said product and how to use the product safely and to avoid injury;

t.  failing to properly and reasonably warn the end user of the subject truck, including Plaintiff, of the dangers of using the brakes with the product;

u.  designing, manufacturing, selling, supplying and distributing a bucket truck that when used properly would cause serious injury to the user; and

v.  designing, manufacturing, and selling a bucket truck that malfunctioned.

140.   By reason of the breach of duties—pursuant to § 402(A) of the Restatement of the Law of Torts (Second), and pursuant to Tincher v. Omega Flex, 104 A.3d 328 (Pa. 2014) and its progeny—Dueco, by and through its agents, servants, workmen, contractors, suppliers, distributors and/or employees as aforesaid, caused Mr. Corry to sustain devastating and fatal injuries.

141.   The bucket truck's defective condition was a cause of the injuries that Mr. Corry sustained.

49

Case ID: 210602408

142.   Defendant Dueco is strictly liable to Mr. Corry for the injuries and damages he suffered.

WHEREFORE, Plaintiff demands judgment in her favor and against Dueco, and/or Dueco's successors of liabilities, in an amount in excess of Fifty Thousand Dollars ($50,000.00) including delay damages, pursuant to Pa. R.C.P. 238, interest and allowable costs of suit and brings this action to recover the same.

## COUNT XI – NEGLIGENCE

## PLAINTIFF WILLIAM CORRY v. JOHN DOE 1

143.   All prior paragraphs of this Complaint are incorporated by reference as if stated fully here.

144.   At all times relevant hereto, John Doe 1 designed, assembled, manufactured, sold, distributed, and/or placed into the stream of commerce bucket trucks, including the subject bucket truck, that caused Plaintiff's injuries.

145.   At all times relevant hereto, John Doe 1 designed, assembled, manufactured, sold, distributed, and/or placed into the stream of commerce bucket trucks, including the subject bucket truck, that caused Plaintiff's injuries.

146.   At all times relevant, John Doe 1 performed maintenance, service, rebuilds, and inspections on the bucket truck.

147.   John Doe 1 owed a duty to those persons purchasing its products and using its products, including Mr. Corry, to provide a reasonably safe product, free from defects which could cause unreasonable hazards.

Case ID: 210602408

148.   John Doe 1 knew, or should have known, of the dangerous condition of bucket trucks, which John Doe 1 intended its customers to use and/or operate.

149.   John Doe 1 knew, or should have known, of the devastating injuries these bucket trucks would cause its customers during use and/or operation.

150.   The negligence and wrongful conduct of John Doe 1, its agents, servants and/or employees, which are the proximate cause of the accident described herein, and the injuries to Plaintiff, consisted of the following:

    a.    failing to properly design the bucket truck to assure operator safety;

    b.    failing to properly design the bucket truck to assure it would not tip over;

    c.    failing to design and/or utilize proper designs for the manufacture, assembly, sale, and distribution of the bucket truck so as to minimize the risk of injury or death to the bucket truck's operators;

    d.    failing to direct and require manufacturers/assemblers to adhere to applicable safety regulations and standards;

    e.    failing to adequately inform and warn purchasers and ultimate users of the bucket truck of the tip over hazards of the bucket truck;

    f.    failing to have adequate warnings on the bucket truck;

    g.    failing to provide adequate warnings to the ultimate users of the bucket truck;

    h.    failing to adequately inform or warn purchasers and end-users regarding the safe and proper method of preventing tip overs while operating the bucket truck;

    i.    failing to adequately inform or warn purchasers and end-users of the bucket truck as to the proper procedures for inspecting, maintaining, repairing, and operating the bucket truck;

    j.    designing, assembling, manufacturing, selling, supplying and distributing the bucket truck in a defective condition;

Case ID: 210602408

k.      designing, assembling, manufacturing, selling, supplying and distributing the bucket truck when it was unreasonably dangerous to the user;

l.      designing, assembling, manufacturing, selling, supplying and distributing the bucket truck which was not reasonably fit, suitable or safe for its intended and represented purpose;

m.      designing, assembling, manufacturing, selling, supplying and distributing the bucket truck when it lacked all of the necessary safety features to protect users of said product;

n.      designing, assembling, manufacturing, selling, supplying and distributing the bucket truck which could be designed more safely;

o.      designing, assembling, manufacturing, selling, supplying and distributing the bucket truck without appropriate safety devices;

p.      designing, assembling, manufacturing, selling, supplying and distributing the bucket truck without appropriate devices to prevent tip-over;

q.      failing to adequately, properly, and/or safely inspect or test the bucket truck or to make necessary corrections and adjustments, which would have revealed or remedied the defective condition;

r.      designing, assembling, manufacturing, selling, supplying and distributing the bucket truck with defective, inadequate, and/or malfunctioning outriggers;

s.      designing, assembling, manufacturing, selling, supplying and distributing a vehicle without properly functioning outriggers;

t.      designing, assembling, manufacturing, selling, supplying and distributing the bucket truck which lacked safety devices to prevent the bucket from elevating if outriggers were not down;

u.      designing, assembling, manufacturing, selling, supplying and distributing the bucket truck which lacked safety devices to prevent the elevator unit from raising if outriggers were not deployed;

v.      designing, assembling, manufacturing, selling, supplying and distributing the bucket truck which lacked an interlock to prevent the bucket from being raised to height if the outriggers were not deployed;

w.      designing, assembling, manufacturing, selling, supplying and distributing the bucket truck with defective, inadequate, and/or malfunctioning outriggers;

52

Case ID: 210602408

x.      designing, assembling, manufacturing, selling, supplying and distributing the bucket truck that did not deploy all of the outriggers;

y.      failing to incorporate safety measures into the bucket truck that would have prevented the risk of injury or death to its operators and passengers;

z.      failing to either know of prior accidents and injuries with the product and/or failing to correct and prevent the same accidents and injuries from reoccurring;

aa.     violating applicable state, local and/or industry standards;

bb.     designing, assembling, manufacturing, selling, supplying and/or distributing the bucket truck which could have been designed more safely;

cc.     failing to ensure that ultimate users were advised of the dangers of the bucket truck and how to use the bucket truck safely and to avoid injury;

dd.     failing to adequately and properly test the bucket truck, including but not limited to outriggers, after its design and/or assembly under reasonably foreseeable circumstances;

ee.     failing to properly test the component parts of the bucket truck, including but not limited to the outriggers, after the bucket truck's manufacture and prior to sale;

ff.     failing to properly test the component parts of the bucket truck, including but not limited to the outriggers, after the bucket truck was serviced, inspected and/or rebuilt;

gg.     failing to include effective outriggers that could prevent the bucket truck from involuntary movement;

hh.     failing to include effective outriggers that could prevent the bucket truck from tipping over;

ii.     failing to service, inspect, and/or maintain the outriggers on the bucket truck so as to prevent it from tipping over;

jj.     failing to adequately service, inspect, and/or maintain the outriggers on the bucket truck so as to prevent it from tipping over;

kk.     failing to provide warning regarding operating the truck on a slope;

ll.     failing to provide warning regarding the amount of slope that posed a danger to operating the bucket truck;

mm.     failing to recall and/or retrofit the bucket truck with proper safety features;

Case ID: 210602408

nn.   utilizing defective materials and componentry in the design and manufacture of the bucket truck;

oo.   designing, manufacturing, and selling a bucket truck that malfunctioned;

pp.   failing to adhere to sound engineering principles consistent with all data available regarding the parameters of intended use and expected environment in the design, testing, manufacture, servicing, inspecting, and/or maintaining of the bucket truck;

qq.   failing to exercise the requisite degree of care and caution in the designing, manufacturing, assembling, distributing, leasing, selling, servicing, inspecting, and/or maintaining of the bucket truck;

rr.   failing to properly service, inspect, and/or maintain the bucket truck;

ss.   failing to properly rebuild the bucket truck; and

tt.   failing to ensure the bucket truck was in a fit for service condition.

151.   By reason of the carelessness, negligence of Defendant Joe Doe 1, as aforesaid, William Corry was caused to sustain severe and devastating injuries.

152.   By conducting itself in this manner, Defendant's acts and/or omissions were a substantial factor in, a factual cause of, and/or increased the risk of harm to Mr. Corry.

WHEREFORE, Plaintiff William Corry demands judgment against John Doe 1 in an amount in excess of Fifty Thousand Dollars ($50,000.00) in compensatory damages, delay damages pursuant to Pa.R.C.P. 238, interest and allowable costs of suit.

## COUNT XII – STRICT LIABILITY

### PLAINTIFF WILLIAM CORRY v.  JOHN DOE 2

153.   All prior paragraphs of this Complaint are incorporated by reference as if stated fully here.

Case ID: 210602408

154.   John Doe 2 manufactured, assembled, fabricated, distributed, and designed the subject bucket truck.

155.   John Doe 2, by and through its agents, servants, workers, contractors, designers, assemblers, manufacturers, sellers, suppliers and distributors is strictly liable under § 402(A) of the Restatement (Second) of Torts because:

    a.   John Doe 2 is engaged in the regular business of designing, assembling, manufacturing, selling, supplying, distributing, and/or placing into the stream of commerce bucket trucks, such as the bucket truck that caused Mr. Corry's injuries;

    b.   The product involved in the subject incident was marketed and placed in the general stream of commerce by John Doe 2;

    c.   The product was expected to and did reach users without substantial change in the condition in which it was designed, assembled, manufactured, sold, supplied, distributed, and/or placed into the stream of commerce;

    d.   The product was designed, assembled, manufactured, sold, supplied, distributed, and/or placed into the stream of commerce in the defective condition for the reasons set forth above and below.

    e.   The product was in a defective condition as: (1) the danger contained therein is unknowable and unacceptable to the average or ordinary consumer; and/or (2) a reasonable person would conclude that the probability and seriousness of the harm caused by the product outweigh the burden or costs of taking precautions.

    f.   The product was in a defective condition as it came with no warnings or information or inadequate warnings or information regarding the dangers and risks associated with the product.

156.   The defective condition of the product caused Mr. Corry's injuries.

157.   John Doe 2, by and through its agents, servants, workers, contractors, designers, assemblers, manufacturers, sellers, suppliers, and distributors, are strictly liable under § 402(A)

Case ID: 210602408

of the Restatement of the Law of Torts (Second), and pursuant to <u>Tincher v. Omega Flex</u>, 104

A.3d 328 (Pa. 2014) and its progeny by:

    a.  designing, assembling, manufacturing, selling, supplying and distributing a product in a defective condition;

    b.  designing, assembling, manufacturing, selling, supplying and/or distributing a product which was not safe for its intended and represented purposes;

    c.  failing to have adequate warnings on the subject bucket truck;

    d.  failing to provide adequate warnings to the ultimate users of the subject bucket truck;

    e.  designing, assembling, manufacturing, selling, supplying and distributing a product that was unreasonably dangerous to the user;

    f.  designing, assembling, manufacturing, selling, supplying and distributing a product which was not reasonably fit, suitable, or safe for its intended and represented purpose;

    g.  designing, assembling, manufacturing, selling, supplying and distributing a product which lacked necessary safety features to protect users of said product;

    h.  designing, assembling, manufacturing, selling, supplying and distributing the bucket truck without appropriate safety devices;

    i.  designing, assembling, manufacturing, selling, supplying and/or distributing a product which could have been designed more safely;

    j.  designing, assembling, manufacturing, selling, supplying and distributing a product without simple and cost-effective safety devices;

    k.  designing, assembling, manufacturing, selling, supplying and distributing the bucket truck without appropriate devices to prevent tip-over;

    l.  designing, assembling, manufacturing, selling, supplying and distributing a product with defective outriggers;

    m.  designing, assembling, manufacturing, selling, supplying and distributing the bucket truck with inadequate, and/or malfunctioning outriggers;

    n.  designing, assembling, manufacturing, selling, supplying and distributing the bucket truck which lacked safety devices to prevent the elevator unit from raising if outriggers were not deployed;

Case ID: 210602408

o.  designing, assembling, manufacturing, selling, supplying and distributing the bucket truck which lacked an interlock to prevent the bucket from being raised to height if the outriggers were not deployed;

p.  designing, assembling, manufacturing, selling, supplying and distributing the bucket truck that did not deploy all of the outriggers;

q.  designing, assembling, manufacturing, selling, supplying and distributing a vehicle without proper devices to prevent tip over;

r.  failing to properly and reasonably design, manufacture, assemble, test and sell the subject truck with the outriggers and/or braking devises necessary to make the subject vehicle safe for its intended use;

s.  failing to ensure that ultimate users were advised of the dangers of said product and how to use the product safely and to avoid injury;

t.  failing to properly and reasonably warn the end user of the subject truck, including Plaintiff, of the dangers of using the brakes with the product;

u.  designing, manufacturing, selling, supplying and distributing a bucket truck that when used properly would cause serious injury to the user; and

v.  designing, manufacturing, and selling a bucket truck that malfunctioned.

158.   By reason of the breach of duties—pursuant to § 402(A) of the Restatement of the Law of Torts (Second), and pursuant to <u>Tincher v. Omega Flex</u>, 104 A.3d 328 (Pa. 2014) and its progeny— John Doe 2, by and through its agents, servants, workmen, contractors, suppliers, distributors and/or employees as aforesaid, caused Mr. Corry to sustain devastating and fatal injuries.

159.   The bucket truck's defective condition was a cause of the injuries that Mr. Corry sustained.

160.   Defendant John Doe 2 is strictly liable to Mr. Corry for the injuries and damages he suffered.

Case ID: 210602408

WHEREFORE, Plaintiff demands judgment in his favor and against John Doe 2 in an amount in excess of Fifty Thousand Dollars ($50,000.00) including delay damages, pursuant to Pa. R.C.P. 238, interest and allowable costs of suit and brings this action to recover the same.

Respectfully submitted,

SALTZ MONGELUZZI & BENDESKY, P.C.

By:    /s/ *Robert J. Mongeluzzi*
        ROBERT J. MONGELUZZI
        DAVID L. KWASS
        BENJAMIN J. BAER
        ***Attorneys for Plaintiffs***

Date:   June 30, 2021

58

Case ID: 210602408

## **VERIFICATION**

The averments or denials of fact contained in the foregoing are true based upon the signer's personal knowledge or information and belief.  If the foregoing contains averments which are inconsistent in fact, signer has been unable, after reasonable investigation, to ascertain which of the inconsistent averments are true, but signer has knowledge or information sufficient to form a belief that one of them is true.  This Verification is made subject to the penalties of the 18 Pa. C.S. §4904, relating to unsworn falsification to authorities.

Date: 06/18/2021  _____

_____
WILLIAM CORRY